**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE**

|  |  |  |
|---|---|---|
| | : | |
| TRINA SOLAR SCIENCE & TECHNOLOGY (THAILAND) LTD. and TRINA SOLAR ENERGY DEVELOPMENT COMPANY LIMITED, | : : : : : | |
| Plaintiffs, | : : | Court No. 26-01222 |
| v. | : : | |
| UNITED STATES, | : : | |
| Defendant. | : : : | |

**MOTION FOR A PRELIMINARY INJUNCTION**

## I.      INTRODUCTION

Pursuant to Rule 65(a) of the Rules of the U.S. Court of International Trade, Plaintiff Trina Solar Energy Development Company Limited ("TEDC" or "Plaintiff"), respectfully move this Court for a preliminary injunction enjoining Defendant from liquidating entries which were entered, or withdrawn from warehouse, for consumption, during the periods December 1, 2022 through November 30,2023 that were produced and/or exported by TEDC and are subject to liquidation instructions issued by the U.S. Department of Commerce ("Commerce") pursuant to its final results in Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2022, 91 Fed. Reg. 3419 (Jan. 27, 2026) (Case No. C-570-980) ("AR11 Final Results"), pending final judgment in this action and any appeals thereof.

As explained below, Commerce (1) has not provided TEDC an opportunity to have an

- 1 -

**Court No. 26-01222**

administrative review of the entries in 2022 that were converted from Type 01 to Type 03 by CBP which is not in accordance with the certification regime Commerce established and thus an abuse of discretion and not in accordance with law; and (2) has acted not in accordance with law and abused its discretion in refusing to evaluate whether alleged infirmities in any certifications warranted inclusion of the goods associated with those entries within the scope of the Solar Cells Orders.

## II.    FACTUAL BACKGROUND

On December 7, 2012, Commerce published in the Federal Register antidumping and countervailing duty orders on crystalline silicon photovoltaic ("CSPV") cells and modules from China.  See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value, and Antidumping Duty Order, 77 Fed. Reg. 73018 (Dec. 7, 2012), and Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, form the People's Republic of China: Countervailing Duty Order, 77 Fed. Reg. 73017 (Dec. 7, 2012) (collectively, "Solar Cells Orders").

On April 1, 2022, Commerce initiated country-wide anti-circumvention inquiries on the Solar Cells Orders covering CSPV whether or not assembled into modules, which are completed in Cambodia, Malaysia, Thailand, or Vietnam ("Southeast Asian Countries") using parts and components form the People's Republic of China and subsequently exported to the United States.  Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Initiation of Circumvention Inquiry on the Antidumping Duty and Countervailing Duty Orders, 87 Fed. Reg. 19071 (Apr. 1, 2022).

Subsequently, President Biden issued Presidential Proclamation 10414, which provided a moratorium on duty collection for solar cells and modules from these same Southeast Asian

Court No. 26-01222

Countries, i.e., Cambodia, Malaysia, Thailand, and Vietnam, between April 1, 2022, through June 6, 2024. See Declaration of Emergency and Authorization for Temporary Extensions of Duty-Free Importation of Solar Cells and Modules from Southeast Asia, 87 Fed. Reg. 35067 (Presidential Proclamation 10414, Jun. 9, 2022). Pursuant to Presidential Proclamation 10414, Commerce promulgated 19 C.F.R § 362, which set forth the scope, definitions, and actions taken to comply with the Proclamation. Commerce directed CBP to "discontinue suspension of liquidation and collection of cash deposits" without regard to estimated antidumping and countervailing duties for imports of cells and modules from the Southeast Asian Countries provided that such merchandise entered is "utilized" by December 3, 2024. See 19 C.F.R. §§ 362.102, 362.103. In other words, entries of such merchandise between November 15, 2022, and June 6, 2024, falling under the purview of the Presidential Proclamation, were granted duty-free treatment provided that such merchandise was "utilized" prior to December 3, 2024. Id. Entries between April 1, 2022 to November 15, 2022 were granted duty-free treatment without the subsequent requirement that the merchandise be utilized (collectively, whether utilization is required or not, such entries are commonly referred to as "Applicable Entries"). Finally, Commerce's new regulations, while not explicitly requiring certifications to qualify for the President's declared duty suspension, included a provision acknowledging Commerce's ability to require certifications. 19 C.F.R. § 362.104.

On December 1, 2022, Commerce preliminarily determined that imports of CSPV cells and modules exported from Cambodia, Malaysia, Thailand, and Vietnam using parts and components from China are circumventing the antidumping duty ("AD") and countervailing duty ("CVD") Solar Cells Orders. Commerce published its preliminary determination of circumvention in the Federal Register. See Antidumping and Countervailing Duty Orders on

- 3 -

**Court No. 26-01222**

Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Preliminary Affirmative Determinations of Circumvention with Respect to Cambodia, Malaysia, Thailand, and Vietnam, 87 Fed. Reg. 75221 (Dec. 8, 2022) ("CSPV Circumvention Prelim. Determination") and accompanying Preliminary Decision Memorandum with Respect to the Kingdom of Thailand, (Dec. 1, 2022) (Barcode 4316097-02) ("Thai Circumvention PDM") and Preliminary Decision Memorandum with Respect to the Socialist Republic of Vietnam, (Dec. 1, 2022) (Barcode 4316098-02) ("Vietnam Circumvention PDM").  Relevant to this appeal are Commerce's determinations related to Thailand and Vietnam.

As part of the CSPV Circumvention Prelim. Determination, Commerce instituted certification and documentation requirements whereby U.S. importers and foreign exporters must (1) certify that imports of solar cells and modules from the inquiry countries were not produced using wafers producers in China,[1] and (2) to maintain supporting documentation thereof, in order for cash deposits pursuant to the Solar Cells Orders not to be required.  See Thai Circumvention PDM, at 26–27.

In the CSPV Circumvention Prelim. Determination, Commerce explained the following procedures importers should follow:

> Importers are required to complete and maintain the applicable importer certification, and maintain a copy of the applicable exporter certification, and retain all supporting documentation for both certifications.  With the exception of the entries described below, the importer certification must be completed, signed, and dated by the time the entry summary is filed for the relevant entry.  The

---

[1] The Appendix VI certification also permits an importer and exporter to certify that subject solar modules were produced using Chinese wafers and that no more than two of the following inputs were produced in China:  silver paste, aluminum frames, glass, backsheets, EVA, and junction boxes.  87 Fed. Reg. 75221, and accompanying PDM at Appendix VI.  This was unchanged in the Final Determination.

>importer, or the importer's agent, must submit both the importer's certification
>and the exporter's certification to CBP *as part of the entry process*.

CSPV Circumvention Prelim. Determination, 87 Fed. Reg. at 75225 (emphasis added).

Commerce provided no explanation or clarification as to what exact procedures or timelines

constitute the "entry process."  Similarly, Commerce instructed that exporters "complete and

maintain the applicable exporter certification," and that the exporter certification be "completed,

signed, and dated by the time of shipment of the relevant entries."  Id.

The requirements for these certifications took effect "as part of the entry process"

fourteen days from the date the CSPV Circumvention Prelim. Determination was published, i.e.,

December 22, 2022.  Id.  For entries between April 1, 2022, through December 22, 2022,

Commerce granted importers a 45-day window, i.e., until January 22, 2023, to complete

retroactive "blanket" certifications for any unliquidated entries of CSPV cells and modules from

Southeast Asian Countries.  Specifically, Commerce stated that these "blanket" certifications

going back to the initiation date should be "completed and signed as soon as practicable," but did

not establish any upload requirement to CBP's document imaging system ("DIS").  Id.

On February 10, 2023, two months after the certification scheme was established via the

publication of the CSPV Circumvention Prelim. Determination, wherein importers were required

to provide both importer and exporter "Applicable Entries" certifications "as part of the entry

process," Commerce issued instructions to CBP on the implementation of the certification

scheme.  See CBP Cash Deposit Message No. 3041408 (Feb. 10, 2023) ("CBP Cert.

Instructions").

In paragraph 5 of the instructions, Commerce instructed that CBP shall "suspend

liquidation of entries" of CSPV cells and modules from the Southeast Asian Countries "for

**Court No. 26-01222**

which the certification requirements described in either paragraphs 14, 15, 16, 17 or 18 below

have not been met." See CBP Cert. Instructions, Message No. 3041408 (emphasis added).

Paragraphs 14, 15, 16, 17, and 18 of the instructions contained copies of the importer and

exporters certifications, as published in the Federal Register. See CSPV Circumvention Prelim.

Determination, 87 Fed. Reg. at 75227 to 75231. Paragraph 12 of Commerce's instructions to

CBP included the following subparts:

> 12f. The importer, or the importer's agent, must submit both the importer's certification and the exporter's certification to CBP as part of the entry process by uploading them into the document imaging system (DIS) in ACE. For entries made from 04/01/2022 through 12/22/2022, for which the importer, or the importer's agent, did not submit both the importer's certification and the exporter's certification to CBP as part of the entry process, the importer, or the importer's agent, must submit both the importer's certification and the exporter's certification to CBP.

> 12h. The importer and exporter will be required to present the certifications, and supporting documentation, to Commerce and/or CBP, as applicable, upon request by either agency.

> 12i. The importer and exporter's claims in their certifications, and any supporting documentation, are subject to verification by Commerce and/or CBP.

Subsequently, paragraph 13 included the following subparts:

> 13a. For all Southeast Asian-Completed Cells and Modules entered, or withdrawn from warehouse for consumption, during the period 04/01/2022 through 12/22/2022, the importer should complete, sign, and date the applicable certification, no later than 45 days after 12/08/2022. For all Southeast Asian-Completed Cells and Modules entered, or withdrawn from warehouse, for consumption, after 12/22/2022, the importer should complete, sign, and date the applicable certification on, or prior to, the date of the entry summary.

> 13b. For all Southeast Asian-Completed Cells and Modules with a shipment date during the period 04/01/2022 through 12/22/2022, the exporter should complete, sign, and date the applicable certification, and provide a copy of the certification to the importer, no later than 45 days after 12/08/2022. For all Southeast Asian-Completed Cells and Modules with a shipment date after 12/22/2022, the exporter should complete, sign, and date the applicable certification and provide a copy of the certification to the importer on, or prior to, the date of shipment.

> See CBP Cert. Instructions, at 9–10.

- 6 -

**Court No. 26-01222**

Commerce's instructions did not similarly state that suspension and collection of cash deposits would be required if paragraphs 12 and 13 were not met. Rather, Commerce only stated that suspension and cash deposits would be required if paragraphs 14 to 18 were not met. Id., at 8.

On August 23, 2023, Commerce published its final determination of circumvention in the Federal Register. See Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Final Scope Determination and Final Affirmative Determinations of Circumvention with Respect to Cambodia, Malaysia, Thailand, and Vietnam, 88 Fed. Reg. 57,419 (Aug. 23, 2023) ("Final Circ. Determination"), and accompanying Issues and Decision Memorandum (Thailand), at Cmt. 12 p. 82, (Barcode: 4419744-02 ) ("Final Circ. Determination Memo"). In its final determination, Commerce continued to find that CSPV cells and modules produced in Thailand and Vietnam using parts and components manufactured in China and exported to the United States were circumventing the Solar Cells Orders. Commerce applied its determination on a country-wide basis, thereby subjecting inquiry merchandise exported from Thailand and Vietnam to importer and exporter certifications and document retention requirements in order not to be subject to AD and/or CVD cash deposits and final assessment rates.

In its final circumvention determination memorandum, Commerce made clear that administrative reviews could be requested for any interested party with certification issues:

> **If** CBP determines that an importer or exporter's certification does not conform to Commerce's requirements, such that the entry is subject to the *Orders*, the importer or exporter can request an administrative review of that entry wherein Commerce will determine the appropriate AD/CVD duty assessment for the entry.

Final Circ. Determination Memo, at 82 (emphasis added).

**Court No. 26-01222**

To summarize, Commerce established two sets of certification rules applying to different windows of entries and shipments. Id.  The first set had a retroactive application, from April 1, 2022, to December 12, 2022, in which importers and exporters were required to complete the certifications by January 22, 2023. Id.  For this set, Commerce did not establish a deadline to upload or provide certifications to CBP in any manner.  Second, Commerce established a second set of rules for entries and shipments after December 22, 2022, in which the certifications had to be completed either prior to the shipment date or entry date, as applicable. Id.  These certifications had to provided to CBP "as part of the entry process."  The instructions from Commerce to CBP for these second set of certifications were not released until February 10, 2023.

Further, the importer certification itself required the input of 25 pieces of information, many of which are unique to the shipment and entry. Id., at Paragraph 14a.  For example, the importer had to provide the unique entry summary number, the invoice number, customer name and address, as well as a date and a signature. Id.  The exporter certification required 17 pieces of information. Id.

In the final determination of Commerce's anti-circumvention inquiries, Commerce specifically addressed concerns from parties regarding the ability to correct certifications in its final issues and decisions memorandum. See Final Circ. Determination, 88 Fed. Reg. at 57425. Commerce contemplated that CBP would rely on the processes already in place that permit importers to correct submitted documents or to provide clarifying information, i.e., through post-summary correction procedures.

On December 1, 2023, Commerce published an opportunity to request review for the eleventh administrative review of the CVD order on Solar Cells from China.  The period of

**Court No. 26-01222**

review ("POR") covered entries between January 1, 2022 through December 31, 2022.  See Antidumping and Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review and Join Annual Inquiry Service List, 88 Fed. Reg. 83917, 83919 (Dec. 1, 2023).  The deadline for interested parties to request administrative review was December 31, 2023.

On December 29, 2023, the petitioner, the American Alliance for Solar Manufacturing, requested administrative review for only TTL.  See Letter from Wiley Rein LLP, "Request for Administrative Review," (Dec. 29, 2023).

On December 31, 2023, neither TTL nor TEDC requested administrative review for the POR.  At that time, TTL had only one entry of subject merchandise using solar cells from China,[2] and TEDC had only one entry pertaining to a separate importer of record.  At this time, neither TTL nor TEDC had any "type 03" AD/CVD entries involving merchandise subject to the circumvention proceeding (i.e., modules with Vietnam or Thai cells).  Rather, at that time, TTL and TEDC only had non-subject "type 01" consumption entries for which they had filed "Applicable Entries" certifications under Appendix IV of Commerce's CSPV Circumvention Prelim. Determination, subject to the duty moratorium under Presidential Proclamation 10414. Nearly all such entries used the "blanket certification" under Appendix IV, which covered entries between April 1, 2022 to December 22, 2022, and did not include a utilization requirement. Thus, to reiterate, at the time to file a review request, all TEDC's and TTL's circumvention-related entries (1) had a "type 01" status and (2) had included the required Appendix IV importer

---

[2] Modules with Chinese cells would fall squarely within the scope of the Solar Cells Orders from China.  At the time to request review, with only one subject entry, TTL expected to receive the all-others rate calculated from mandatory respondents.

**Court No. 26-01222**

and exporter certifications.  Neither TTL nor TEDC were aware at that time of any certifications for such POR entries as having been rejected by CBP for clerical errors.

On February 8, 2024, Commerce initiated the eleventh administrative review of the CVD order on Solar Cells from China.  See Initiation of Antidumping and Countervailing Duty Administrative Reviews, 89 Fed. Reg. 8641 (Dep't. Commerce Feb. 8, 2024).  The initiation notice only listed TTL, and did not include TEDC.

On April 21, 2025, Commerce published its preliminary results in the Federal Register. See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, From the People's Republic of China: Preliminary Results of Countervailing Duty Administrative Review, and Rescission in Part; 2022, 90 Fed. Reg. 16666 (Apr. 21, 2025).  Because Commerce never initiated review for TEDC, it was not listed as a company for which review was rescinded.

The deadline for interested parties to submit case briefs was May 12, 2025, and rebuttal briefs were due on May 19, 2025.  Because TTL and TEDC did not have any converted "type 03" subject entries at the time of briefing, it did not file any briefs.

On October 21, 2025, long after the initiation of the administrative review underlying this appeal, due to perceived clerical errors in their Appendix IV certifications, CBP converted TTL and TEDC's entries of solar modules from Vietnam and Thailand from the POR from "type 01" consumption entries to "type 03" AD/CVD entries, thereby subjecting them to the underlying administrative review.

At the time of discovering it had converted "type 03" subject entries necessitating a need to request review in the underlying administrative review, it was seven months past the deadline to submit new factual information (i.e., 30 days prior to the preliminary determination), and it was five months past the deadline for interested parties to submit case briefs.  Further, at that

- 10 -

Court No. 26-01222

time, Commerce's final results were scheduled to be issued on October 20, 2025, the day prior to TTL and TEDC discovering that it had converted subject entries. Finally, at that time, Commerce had already rejected other interested parties' requests for administrative review sought after the deadline. See Memorandum to the File, "Rejection and Removal of Chint and Jinko Solar Submissions," (Sept. 3, 2025).

In the companion AD administrative review of the Solar Cells Orders, TTL and TEDC received notice of rejected certifications from CBP covering that POR before the deadline for briefing. Accordingly, they were able to raise this issue with Commerce at the briefing stage. Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2022–2023, 90 Fed. Reg. 60060 (Dec. 23, 2025), and accompanying Issues and Decision Memorandum, at Comment 3 (Dec. 15, 2025) ("IDM").

On January 27, 2026, Commerce's final results of administrative review published in the Federal Register. See AR11 Final Results, 91 Fed. Reg. 3419. Commerce's final Issues and Decision Memorandum, dated December 29, 2025, was not released on ACCESS until January 22, 2026. See e.g., IDM. In response to a separate interested party's briefing, submitted by JA Solar, Commerce declined to amend liquidation instructions covering entries for companies that did not timely request administrative review. See IDM, at 26. In doing so, Commerce explained that (1) only CBP was responsible for the enforcement of the certification regime established by Commerce in the circumvention proceedings, and that (2) parties subject to such regime should have requested administrative review prior to the December 31, 2023 deadline, even if they were unaware at that time of having subject entries. See id., at 26–27.

- 11 -

**Court No. 26-01222**

In the subsequent administrative review, covering entries between January 1, 2023, through December 31, 2023, despite requests by parties that Commerce cover an expanded period of review to include entries from 2022, Commerce declined to do so.  Instead, it initiated the twelfth administrative review according to its normal time period, effectively leaving no way for affected parties, including TTL and TEDC, for an opportunity to have their converted rate advanced entries reviewed.  See Initiation of Antidumping and Countervailing Duty Administrative Reviews, 90 Fed. Reg. 8187 (Jan. 27, 2025) (initiating the twelfth CVD administrative review on Solar Cells from China only covering entries from January 1, 2023 through December 31, 2023).

As required by Rule 7(f) of the Rules of this Court, the undersigned counsel consulted with counsel for Defendant at the U.S. Department of Justice, Tate Walker, seeking consent to this motion via email on April 21, 2026. Defendant stated via email on April 21, 2026 as follows: "Defendant opposes a preliminary injunction because no review was requested on plaintiff Trina Solar Energy Development Company Limited. Accordingly, Commerce did not initiate review of Trina Solar Energy Development Company Limited. See Initiation Notice, 89 Fed. Reg. 8,641, 8,646-47. Because plaintiff's entries were not subject to review in the challenged proceeding, plaintiff is not entitled to enjoinment of these entries. See 19 U.S.C. § 1516a(c)(2). The Government plans to file a full response to the motion in the timeline provided by the Court's rules."

This motion is timely, pursuant to USCIT Rule 56.2(a), because it is being filed within 30 days of service of the complaint. TEDC is prepared to support the assertions made in this motion at an evidentiary hearing or through supplemental submissions, and will make itself available to be heard through counsel, as this Court deems appropriate and helpful in its consideration and

- 12 -

**Court No. 26-01222**

disposition of this motion.

## III.    LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy," but one that is available where warranted under the familiar four-part test: (1) irreparable harm absent relief; (2) likelihood of success on the merits; (3) balance of hardships; and (4) the public interest.  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); see also eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006).[3]  This Court has authority to grant such relief under 28 U.S.C. §§ 1585 and 2643(c)(1).  This Court has previously granted preliminary injunctive relief in the form of suspending liquidation.  See, e.g., In re Section 301 Cases, 45 CIT __, __, 524 F. Supp. 3d 1355, 1372 (2021) (explaining that "{i}t is both inequitable and against the public interest for the Government to retain unlawfully collected duties" in the Court's order to "restrain liquidation of any unliquidated entries of merchandise imported from China" being challenged in that case).

## IV.    THE COURT SHOULD ENTER A PRELIMINARY INJUNCTION SUSPENDING LIQUIDATION OF TEDC'S ENTRIES SUBJECT TO COMMERCE'S FINAL RESULTS

TEDC seeks this narrowly-tailored, limited relief, i.e., the suspension of liquidation of its entries subject to this appeal, as a protective measure to safeguard its interests following CBP's conversion of these Type 01 entries into Type 03 entries after the opportunity to request an administrative review had passed in the current proceeding on appeal.  For the reasons provided below, this Court should enjoin the liquidation of TEDC's entries subject to this appeal because  (1) TEDC will suffer irreparable and immediate injury without an injunction; (2) TEDC will likely prevail on the merits; (3) the public interest will be best served by granting

---

[3] The Supreme Court's decision in Trump v. CASA, Inc., 606 U.S. 831 (2025) does not negate TEDC's claims, as this motion adopts the principles outlined CASA by demonstrating that TEDC meets the four factors that warrant an injunction. See CASA, 606 U.S. at 831-35, 915-16.

**Court No. 26-01222**

the injunction; and (4) the balance of hardships favors TEDC.

### A. Liquidation of TEDC's Entries Poses a Substantial Risk of Irreparable Harm

TEDC will be immediately and irreparably harmed unless this Court grants TEDC's Motion for Preliminary Injunction. The Federal Circuit has previously held that the prospect of mootness of an appeal due to the liquidation of entries constitutes grounds for finding immediate and irreparable harm in the absence of an injunction. See Zenith Radio Corp. v. United States, 710 F.2d 806, 810 (Fed. Cir. 1983) (noting that "the consequences of liquidation {faced by the domestic producer} do constitute irreparable injury."); see also In re Section 301 Cases, 45 CIT at __, 524 F. Supp. 3d at 1362-63; Canadian Wheat Bd. v. United States, 31 CIT 650, 662-63, 491 F. Supp. 2d 1234, 1246-47 (2007); Nucor Corp. v. United States, 29 CIT 1452, 1461, 412 F. Supp. 2d 1341, 1349 (2005). Without this Court's intervention, the potential liquidation of some or all of TEDC's entries would deprive TEDC of its statutory right to judicial review.

The harm facing TEDC if this Court does not grant preliminary injunctive relief is further exacerbated given the unique circumstances of this appeal. As explained in more detail below, without the requested injunction, TEDC's entries may become unreviewable at Commerce. TEDC never had an opportunity to request a review of its entries in the administrative review of the CVD order subject to this appeal as CBP converted TEDC's entries to Type 03 entries after the opportunity to request a review had passed. See Compl. at 13. As the opportunity to request a review of its entries at Commerce had passed, TEDC requested a review of its entries in the subsequent twelfth AD administrative review. Id., at 12-13. In the twelfth CVD administrative review, TEDC requested that Commerce examine the certifications that CBP had rejected and determine whether such entries should be subject to administrative review, and if not, returned to Type 01 status. Similarly, in the eleventh administrative review of the AD order covering entries from December 2022 to November 2023, TEDC similarly requested that Commerce evaluate the certifications and

whether they were properly rejected and decide whether they should be considered within the scope of the Solar Cells orders.  Yet again, in the thirteenth review of the CVD order, TEDC requested review even though it believes that it actually should have no shipments subject to the review so that Commerce could determine whether its goods are actually within the scope of the Solar Cells Orders. This Court should order to continue suspension of its late-converted Type 03 entries contested in this appeal while Commerce determines whether it will review these entries in the subsequent twelfth or thirteenth CVD administrative reviews.  If CBP were to liquidate TEDC's entries subject to this appeal, CBP will seek duties, unlawfully applied, at the China wide-CVD rate and TEDC will be permanently deprived of its statutory right to a review of its entries.  TEDC, therefore, would be irreparably harmed absent a preliminary injunction ordering the suspension of liquidation of its entries subject to this appeal.

### B.  TEDC Is Likely to Succeed on the Merits

TEDC is likely to succeed on the merits of its case-in-chief.  The Court has recognized that a showing of irreparable harm lowers the movant's burden in demonstrating its success on the merits and considers the burden met if the movant raises "questions which are 'serious, substantial, difficult and doubtful.'" Timken Co. v. United States, 6 CIT 76, 80, 569 F. Supp. 65, 70 (1983) (citation omitted).  TEDC's complaints raise substantial, difficult and serious questions of law with respect to (1) Commerce refusing to make available administrative remedies after establishing a certification regime that anticipated importers may need to correct or amend immaterial aspects to certifications and (2) Commerce's arbitrary dereliction of responsibility to determine whether TEDC's late-converted Type 03 should be considered within the scope of the Solar Cells Orders.

The AD statute is clear that once a year interested parties are allowed the opportunity to request an administrative review of their entries.  Commerce is statutorily required to provide interested parties with an opportunity to review "the normal value and export price (or constructed

export price) of each entry of the subject merchandise" on a yearly basis.  19 U.S.C. § 1675(a)(1)-(2); see also 19 C.F.R. § 351.213 ("During the same month, an exporter or producer covered by an order . . . may request in writing that the Secretary conduct an administrative review of only that person."). Here, however, TEDC may be deprived of its right to a meaningful review of its entries due to the late conversion of its entries from non-subject Type 01 entries to Type 03 entries subject to AD/CVD after the period to request a review had passed.

Recognizing that the timing of its affirmative circumvention findings may result in entries becoming subject to AD/CVD after the deadline has passed to request the applicable administrative review, Commerce has previously expanded its administrative reviews to cover prior periods where CBP retroactively suspended entries after the opportunity to request an administrative review had passed.  See Certain Hardwood Plywood Products From the People's Republic of China: Final Scope Determination and Affirmative Final Determination of Circumvention of the Antidumping and Countervailing Duty Orders, 88 Fed. Reg. 46,740 (July 20, 2023), and accompanying Issues and Dec. Mem. at 180-81 (Commerce concluded that expanding the periods of review was "the most appropriate mechanism to address" certain procedural concerns given that "all opportunities to review {certain} entries had passed.").  Notably, in the preamble updating its regulations, in response to commentors with concerns on country-wide circumvention determinations, Commerce responded by explaining that Commerce uses certification programs to allow parties who have not engaged in the practices which Commerce determined were circumventing an order to certify that they did not participate in such conduct.  See Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws, 86 Fed. Reg. 52,300, 52,353 (Sept. 20, 2021).  As a part of its justification for such country wide determinations and certification regimes, Commerce also explained that "parties can seek a changed circumstances review or raise issues regarding ongoing certification requirements in the context of an administrative review, as appropriate."  Id.

However, in this circumstance, TEDC did not become aware of any need for an

**Court No. 26-01222**

administrative review until long after the opportunity to request review, submit factual information within regulatory deadlines, or to submit case briefs. TEDC had no standing to request administrative review within the normal time frame prescribed. Commerce will act arbitrarily and contrary to law if it executes liquidation instructions covering type 03 entries that at the time prescribed for requesting review were type 01 entries for which TEDC had no reason to request review. By doing so, to the extent the entries subject to this appeal liquidate, Commerce will have deprived TEDC of its statutorily mandated right to a review of its entries. Specifically, Commerce's decision may deny TEDC its statutory right under 19 U.S.C. § 1675(a) to have its entries reviewed during an administrative review where CBP converted TEDC's to Type 03 after the deadline to file a request for an administrative review had passed. For these reasons, TEDC is likely to succeed on the merits of its claims, or, at a minimum, this appeal raises substantial, difficult and serious questions of law warranting preliminary injunctive relief.

## C. The Balance of Hardships Favors TEDC

The hardships weigh heavily in TEDC's favor. The hardship inquiry requires the Court to determine which party will be most adversely affected by its decision to grant or deny a preliminary injunction motion. See Ugine-Savoie Imphy v. United States, 24 CIT 1246, 1250, 121 F. Supp. 2d 684, 688-89 (2000); see also Kwo Lee, Inc. v. United States, 38 CIT 1496, 1504-05, 24 F. Supp. 3d 1322, 1331-32 (2014). Without the issuance of a preliminary injunction, TEDC's entries could face the loss of its right to meaningful judicial review. Further, without a preliminary injunction, TEDC's entries could face significant CVD duties. Again, Commerce has standing requests in both the twelfth and thirteenth administrative reviews to cover these entries as CBP converted them to Type 03 entries after the deadline to request the AD administrative review subject to this appeal had passed. Liquidation of TEDC's entries, which may result due to Commerce's failure to issue special instructions to CBP for the continued suspension of TEDC's late-converted Type 03 entries, would

**Court No. 26-01222**

prevent Commerce from considering TEDC's entries in the subsequent twelfth and thirteenth CVD administrative reviews. By contrast, the United States faces only the modest burden of suspending liquidation for a limited period of time—an administrative function that CBP performs routinely in AD/CVD contexts. A delay in liquidation will, at most, constitute an "inconvenience" to the United States. Timken, 6 CIT at 81, 569 F. Supp. at 70-71. A modest delay in liquidation of TEDC's entries while this Court considers the merits of TEDC's claim poses a negligible burden on the United States. For these reasons, the balance of hardships favors TEDC.

### D. The Public Interest Strongly Supports Granting TEDC Preliminary Injunctive Relief

The public interest is overwhelmingly served by enjoining liquidation of TEDC's entries subject to this appeal. Allowing liquidation to proceed would undercut judicial review and risk permitting unlawful collection of AD duties to become permanent. Case law firmly establishes that ensuring accurate assessment of AD and CVD duties and effective enforcement of trade laws is in the public interest. See e.g., PPG Indus., Inc. v. United States, 11 CIT 5, 10 (1987); Smith- Corona Grp. Consumer Prods. Div. v. United States, 1 CIT 89, 98, 507 F. Supp. 1015, 1023 (1980), aff'd, 713 F.2d 1568 (Fed. Cir. 1983). The Court also recognizes that granting preliminary injunctions serves the annunciated public interest by "maintain{ing} the status quo of the unliquidated entries until a final resolution { on} the merits {is issued}." SKF U.S.A. Inc. v. United States, 28 CIT 170, 176, 316 F. Supp. 2d 1322, 1329 (2004). To permit the imposition of these CVD duties to take final effect through liquidation of entries would betray the very principles that gave rise to this Court's jurisdiction. The public interest is best served when entries such as these, where liquidation may result in the unlawful collection of duties given that Commerce may not be able to review these entries in the subsequent twelfth or thirteenth CVD administrative reviews, are enjoined from liquidation until this Court can rule on the issues appealed by TEDC.

**Court No. 26-01222**

**V.     CONCLUSION**

For the foregoing reasons, TEDC respectfully requests that the Court grant this Motion for a

Preliminary Injunction enjoining liquidation of TEDC's entries subject to this appeal.


Respectfully submitted,

/s/ Jonathan M. Freed
Jonathan M. Freed
MacKensie R. Sugama

**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE, Suite 500
Washington, DC  20003
Tel:  (202) 223-3760
jfreed@tradepacificlaw.com

Counsel for Plaintiff Trina Solar Energy
Development Co. Ltd.

April 21, 2026